Good morning, counsel. The court is calling case number 20-1459, Ismael Hernandez-Alvarez v. William Barr. We'll begin for the appellant, Ms. Baldini-Potterman. May it please the court. My name is Maria Baldini-Potterman, and I represent Petitioner Ismael Hernandez-Alvarez again before this court. Petitioner timely filed his 2004 motion to improperly declined to consider based solely on jurisdictional grounds under its post-departure bar regulation at the time. This court then subsequently invalidated the post-departure bar in 2010. His timely filed statutory motion to reopen remained pending before the board when he filed what this court should deem as a supplemental motion to reopen and reconsider his case in 2019 in which he raised again that he was not deportable as charged based on the Supreme Court's decision in Esquivel-Quintana. Ms. Baldini-Potterman, I'm sorry to interrupt. The question of the 2019 motion and the 2004 motion still being open, where did you argue that before the board? You have to exhaust that before you can bring that issue to this court. Where did you specifically raise that issue that the 2019 motion should relate back to the 2004? Thank you, Your Honor. Within the motion to reconsider and reopen filed in 2019, we specifically pointed out to the board the post-departure bar regulation had been overturned by the Seventh Circuit. We also argued that in our opening brief that the issue of exhaustion was addressed by the board because the board acknowledged this court's ruling in Marin Rodriguez and finding that it was improper that the regulation could not strip. But you made that argument in terms of jurisdictions, not in terms of relation back. So you certainly raised that, but it was not in the context of saying to the board, your 2019 motion should relate back to the 2004. It was in terms of, look at this case, the court has jurisdiction to hear this. Those are two separate issues. Yes, Your Honor. And with respect to the issue of exhaustion, our argument is that because the board did address this court's decision with respect to Marin and the post-departure bar regulation, and then the board also decided that it did not have authority to address petitioner's argument under Esquivel-Quintana, and it specifically noted that it could not do so in light of this court's precedent, that it, in effect, did address the issue and looked at it as being relating back. Ms. Baldini-Potterman, how are we to factor in the 2005 opinion? I'm specifically citing to 432 F. 3rd 763. So this court's opinion with regard to the nature of whether the indecent solicitation of a child is an aggravated felony, how are we to factor that into your argument here? Your Honor, we submit that this court needs to consider the decision in Esquivel-Quintana, which directly addressed the issue of age in terms of statutory rape convictions. And for the first time, there was a bright line rule, as announced by the Supreme Court, in order for a statutory rape conviction to be sexual abuse of a minor, the criminal state statute must contain the requirement that the victim be under the age of 16. With respect to the Illinois statute, Your Honor, the requirement that the victim be under the age of 17 is not explicit. Instead, the Illinois statute is overbroad because it states that the victim must be under the age of 17. Furthermore, the Fifth Circuit Court of Appeals in Shroff looked at a similar Texas statute and, in fact, held that under Esquivel-Quintana, the Texas statute for indecent solicitation was not an aggravated felony. It was not considered to be under the minimum conduct standard, as announced by the Supreme Court. It was not sexual abuse of a minor, and so, therefore, indecent solicitation also was not sexual abuse of a minor. I understand these arguments by analogy, but are there race judicata problems for this case, for this particular petitioner, as a result of our previous ruling? Your Honor, when the Supreme Court announces a rule, it does apply backwards in time, and so we submit to the court that this court has the ability to go back and consider its 2005 decision under the Supreme Court's decision in Esquivel-Quintana. But you only get there if there's equitable tolling. Would you agree with that? Your Honor, we don't agree that we only get there if there's equitable tolling. He filed a timely motion to reconsider that the board never adjudicated. Let's assume if he did file a timely motion to reconsider, a reconsideration motion deals with the law at the time, as opposed to a motion to reopen, which deals with the law subsequent to that. So, your motion to reconsider would go back in time to 2004, and the Supreme Court's opinion in Esquivel hadn't been issued at that time. Yes, Your Honor. However, we are arguing that the 2019 motion does relate back to the 2004 motion, and therefore, that's... If we disagree with you on that, do you agree that you could only bring this argument then if there's equitable tolling? Your Honor, then there's the option of equitable tolling, and then there's also the option of motion to reopen. So, there really are three separate motions that were raised before the Board of Immigration Appeals, and that we did raise and brief before this Court. With respect to equitable tolling, the Board's underlying decision is at issue. In this particular case, the petitioner did everything he possibly could at the time to stop his deportation so that the Board could address his case on the motion to reconsider. He filed an emergency motion for estate. That was denied by the Board. He filed the emergency motion in the District Court, which took place prior to the REAL ID Act of 2005 being passed. That was denied. This Court also denied his emergency motion. So, as far as due diligence under that ground, we submit that he met the efforts. He has continued to pursue the argument that he was never deportable as originally charged. What about the fact that it took two years from the time Esquimalt-Quintana was issued for him to bring the motion? Your Honor, considering that Mr. Esquimalt-Quintana was in Mexico, this motion was filed as quickly as it could be prepared and submitted. In order to meet the sua sponte, the exceptional circumstances standard, a large amount of evidence was filed with that How could we say that the Board erred in denying tolling when the motions were filed years, not months, after the cases were issued? This Court can review the equities in this case, and decide that Mr. Petitioner was stripped of his permanent residence and that the just outcome in this case would be full permanent residence. Again, he was never deportable. But not on equitable tolling. On equitable tolling, we have to look at it from an abuse of discretion. It sounds like you're jumping ahead if we get to sua sponte. But on the equitable tolling issue, the question is whether or not the Board abused its discretion in finding that it didn't apply. Your Honor, with respect to the abuse of discretion standard, one issue that has to do with the abuse of discretion is again that Mr. Alvarez was a great deal to lose. And so with respect to the prejudice argument, we submit that he has demonstrated prejudice, which is also part of the equitable tolling discussion. But you also have to establish diligence. And that's what the Board found, that given that he raised this motion years after the Supreme Court issued these opinions, that he hasn't established diligence. If you don't have diligence, it doesn't matter whether or not there's prejudice. So how do you get around, again, our standard of review is abuse of discretion. How do you get around that given the Board's findings that your client wasn't diligent in pursuing this? Your Honor, we submit our argument, again, that petitioner did his best to work with counsel from outside the country to file his motion under the circumstances of this case. He had been deported in February of 2004. And I'd like to move on to the issue of sua sponte circumstances and the exceptional circumstances standard. We submit to this Court that the Board abused its discretion in denying his request that sua sponte reconsider its prior decision. In this particular case, petitioner came to the United States at the age of 11. He was a permanent resident when he immigrated legally to the United States. Under the Esquivel-Quintana decision, his conviction should be found not to constitute an aggravated felony. He presented evidence regarding his extensive family ties in the United States and the fact, again, that he was never deportable as originally charged. But I think you would agree on the sua sponte issue that under our existing case law, the Fuller decision, that our review of the Board, what the Board did for sua sponte is very, very limited. And that under Fuller, we can only assess whether or not constitutional or legal errors were committed by the Board. So how would you fall within that limited exception? Within that exception, Your Honor, the Board did not consider the Esquivel-Quintana decision of the Supreme Court as applied to his case. On page two of its decision, it stated, we are not convinced of any error in our application of the law at the time. So the legal issue is that the Board has not actually decided how Esquivel-Quintana would apply to the case at this time. But when the Board made that statement in its decision, it was discussing the motion to reconsider, not the motion to reopen. So it was discussing the motion to reconsider, and what was relevant was the law at the time of the motion to reconsider, and Esquivel-Quintana did not exist at the time. And the Board even goes on to cite the respondent's motion, and that motion that it cites in support of that statement doesn't even raise Esquivel-Quintana. How can we say that that supports that the Board ignored Esquivel-Quintana? It's a different context. Further down on page two of its decision, it says that, as well as the respondent's argument in support of sua sponte reopening, it did not address at all how the outcome would be different if it did actually consider and apply Esquivel-Quintana to the statutory elements of his 2003 conviction. But it sounds, Ms. Baldini-Potterman, like you're asking us to enter into a review, and Fuller's door is very narrow. It's this misapprehension. We have to be bound by that very narrow view, don't we? Your Honor, my time has expired. May I answer your question? You may. Thank you. This Court has the ability to remand this case to the Board of Immigration Appeals with instructions that it consider Esquivel-Quintana in light of petitioner's conviction. And we would urge the Court to remand it. This Court's decision in Correa-Diaz addressed a under Indiana law in which the statute itself required as an element that the victim be under the age of 16. And so this Court's precedent does apply, and we would ask that the Court, if it is concerned, remand this to the Board with instructions to address the Esquivel-Quintana argument. Thank you. Thank you, Ms. Baldini-Potterman. We are now going to move on behalf of the appellee to Mr. Kelch. Mr. Kelch. Good morning. May it please the Court, my name is Greg Kelch, and I represent the United States Attorney General. In order to merit equitable tolling, the moment has to demonstrate due diligence. In this case, Mr. Hernandez-Alvarez is filing a motion to reopen some 15 years after his affidavit in support of reopening and reconsideration. He has provided no evidence of due diligence whatsoever. If there were problems that he had in Mexico raising his argument, his motion, he did not tell us about them. He simply has no information about his diligence. The only thing we really have is the argument of counsel in the motion, where it says that Mr. Hernandez-Alvarez first learned of Esquivel-Quintana in late 2017 and about Pereira in June 2018. But yet his own affidavit in support of reopening wasn't written until December of 2018, a year after he learned of Esquivel-Quintana, and he didn't file his motion until May of 2019. What about counsel's argument that the fact that he's in a different country, probably didn't learn about this right away? What about that argument? Why wouldn't that be sufficient to get around due diligence? Because he hasn't presented that evidence to the board in his affidavit or elsewhere. There's nothing in this motion that says he was having any difficulties preparing a motion to reopen because he was in Mexico. It may have been possible that he learned of Esquivel-Quintana and restarted his life again in Mexico. He simply wasn't sure that he wanted to seek reopening, and he took a while to come to that decision, which would not be due diligence. I mean, there's just no evidence in the record to support that. Timeliness is a threshold determination, and because it's not a timely motion to reopen and to reconsider, the BIA was not required to do more. It wasn't required to engage in the merits of whether or not he actually would still be removable if his case were heard today, if there's a material change in circumstances based upon these decisions. It wasn't required to engage in those issues. All it was required to do was to note that it's an untimely motion for reopening and reconsideration. So I will move forward to the petitioner's argument about this motion relating back to his 2004 motion for reconsideration. And as Judge St. Eve noted, this has not been raised before the agency. He did not argue before the BIA that his new motion relates back to his 2004 motion. Quite the opposite. What he argued to the board was that his 2019 motion should be considered timely due to equitable tolling. But could petitioner have sought review of the board's decision to consider the motion for reconsideration withdrawn? And if so, would that decision have been reviewable by the court? Yes, Your Honor, he could have. That's, in fact, what happened in Marin Rodriguez and as the court held in Madrigal v. Calder, a decision that disposes of a motion on procedural grounds is finality. It's a final decision. He could have gone to this court and raised the same arguments that Marin Rodriguez raised. But I think the problem with doing all of that, Judge Roeder, is that back in 2004, he hadn't yet thought of the Esquivel-Quintana argument and the Pereira argument. So that wouldn't really have changed the course of his case. And so I think that's why he's now trying to make an argument that, well, this relates back to some pending motion to reconsider. And again, that hasn't been exhausted before the agency. And there's no good reason to think why that 2004 motion would be considered pending. The BIA issued a decision. It disposed of the motion saying under the departure bar, he could have sought judicial review, and he did not do that. So we have an untimely motion to reopen with no equitable tolling, and it does not relate back to any prior motion that is still pending. And I did want to add one point that Judge St. Eve was making about the BIA's decision with regard to what it's actually holding here. Because there is this line in the second page where they say they recognize he filed a motion for reconsideration in 2004. It was deemed to be withdrawn. That was wrong under Marin Rodriguez. And then they say, even if we reach the merits of the motion, we are not convinced of any error in our application of law at that time. After that sentence, there's a citation. Respondents' motion at 11 to 13. And that corresponds to pages 47 to 49 of the administrative record. That is not his Esquivel Quintana argument. When he appeared before the BIA, he's got two arguments about his criminal removability. One is Esquivel Quintana, but the other is this argument that he raised in his last petition for review about impossibility, that he cannot be removable for indecent solicitation of a child because he was dealing with an undercover police officer and there was no child. And in this last decision, a published decision of this court, the court held that impossibility is not a defense. So the BIA seems to have carefully avoided reaching the merits of Esquivel Quintana and how it would apply to this petition. And I also want to note that, just to follow up on a footnote in our brief, we the government are not conceding that he is no longer removable under Esquivel Quintana. Esquivel Quintana involved a statutory rape case based solely on the age of the parties. The petitioner was convicted of indecent solicitation of a child. That has a mens rea element to it. He has to knowingly solicit a child and he has to act with the intent to commit certain criminal offenses. Does Esquivel Quintana apply to this case? It is not for me to say in the first instance, it's for the BIA, but I want to be clear that we're not conceding that. And also I would remind the court that he was also charged with child abuse by the DHS and the agency has not reached that issue because they resolved it on sexual abuse of a minor. And so in the prior petition for review, this court held that indecent solicitation of a child is a partially completed act. The court held it as partially completed sexual abuse of a minor. It may in fact be partially completed child abuse, or it may not. Again, I want to be clear, this is all for the court that we're not conceding that issues about his removability at this time. So the motion to reopen is untimely. He hasn't demonstrated that he merits equitable tolling. His new motion to reopen does not in fact relate back to any prior pending motions. So then we just come to the issue of sua sponte reopening. And as Judge Brennan noted, sua sponte reopening, the court's review of that is very narrow. It's only for whether the BIA misapplied the law. There's no evidence here that they misapplied the law or they did not understand his argument. They understood his Esquivel-Quintana argument. They've cited to it at least twice in their decision. What they seem to be indicating with their citation, the matter of JJ, is that they're not inclined to use their sua sponte authority simply as a of the time limitations on a motion to reopen. And that's a reasonable thing for the board to do. He learned about Esquivel-Quintana in late 2017 as his counsel argued in the motion. He hasn't provided any evidence that he had shown due diligence. The BIA is not required to use its sua sponte authorities to rectify that deficiency. And that being the case, unless there are any other questions of the court, I will conclude by asking that the court deny this petition for review. Thank you. Thank you, Mr. Kelch. Ms. Baldini-Potterman, we're going to give you another minute on rebuttal if there's any final thoughts you'd like to share. Thank you very much, Your Honor. With respect to the case of Mondragal, on pages five through seven in our reply brief, we addressed that Mondragal is not on point in this case. Mondragal involved a different regulation of the board which said that if the non-citizen departs the country, then a direct appeal is withdrawn. So it's a different regulatory section that this court has not overruled in comparison to petitioners where this court has overturned the regulation on the post-departure bar. With respect to the issue of exhaustion, I would bring this court's attention to page eight of our reply brief where we addressed the exception on the issue of exhaustion as it applies to this case. With respect to the issue of the argument of impossibility, the Fifth Circuit's decision in Shroff addressed that with respect to the Texas statute. Thank you very much, Your Honors. Thank you, Ms. Baldini-Potterman. Thank you, Mr. Kelch. The case will be taken under advisement.